JOHNSON, Judge.
This is an appeal from a final judgment of the Circuit Court of Okaloosa County, Florida, entered by the Honorable Clyde B. Wells, Circuit Judge.
In the complaint and amended complaint, the plaintiff prayed for specific performance of an oral agreement to convey certain real estate and for certain damages sustained by the plaintiff resulting from the defendants’ failure to convey said real estate.
In his answers, the defendant generally denied the allegations of the complaint and as an affirmative defense to the complaints, alleged that the purported agreement to sell real estate was in violation of the Statute of Frauds of the State of Florida.
Considerable testimony was adduced and a number of written exhibits were filed before the trial court.
In the testimony of Mr. Ferrin Campbell, he admitted that he and his partner, Mr. Rice, had previously represented both of the primary parties in this law suit. Mr. Campbell had explained to the parties that he could not represent both parties in the proposed real estate transaction. We have carefully studied the testimony of Mr. Campbell and we fail to find anywhere that Mr. Campbell had categorically denied that he was representing the plaintiff or categorically admitted that he was representing the defendant. Certain statements made by Mr. Campbell indicated that Mr. .Campbell was trying to explain the true situation when he said in answer to a question by the plaintiff, after he had told the parties he could not represent both, the plaintiff had said “all he wanted us to be sure he was getting a good title.” Further on in the testimony of Mr. Campbell, he said “ . . . and I knew that Mr. Par *394 ker, after it was explained to him, put me in a position of kind of representing both sides. I realized that he was not using another attorney in this transaction and I realized that he was looking to me to see that his title was straight.”
It appears to us that at this point, the plaintiff (appellee) had made Mr. Campbell his attorney, whether he wanted to or not. Certainly, Mr. Parker would have had difficulty in refuting Mr. Campbell’s action in approving the title if it had become adverse to the plaintiff. The plaintiff was paying for a title policy, which is normally a cost to a seller, and there is no evidence from either party as to this item of cost.
The appellee has submitted this policy binder in evidence as one written memorandum taking this transaction out from under the Statute of Frauds. A reading of the policy binder discloses that nowhere in the binder is the name of the appellant mentioned. The invoice from the title company is made to Mr. Campbell.
Also filed in evidence is a closing statement purporting to be a closing of the sale to the plaintiff and his brother, Simon Thomas Parker. This was signed by the plaintiff and Simon Thomas Parker and by Mr. Ferrin C. Campbell. Mr. Campbell designates himself as “closing attorney.” This closing statement is not dated and there is no testimony as to when the same was typed. There is testimony that the defendant-appellant herein had refused to sign the same. Here again we fail to find how this written memorandum, not signed by the defendant and, in fact, which he refused to sign, can serve to take this transaction out of the Statute of Frauds. The fact that Mr. Madden, appellant, refused to sign the closing statement appears to us to be tantamount to foreclosing any authority for Mr. Campbell to sign as his attorney. As Mr. Campbell testified: he merely signed as closing attorney (without claiming to represent either of the parties).
According to the evidence it appears that appellee gave a check to Mr. Campbell purportedly to apply to the purchase of the land in question. This check was converted into a cashier’s check, payable to Citizens & Peoples National Bank, on which there was a notation of part payment on 240 acres purchased by W. T. Parker, Jr. and Simon Thomas Parker from John Madden. This check was not cashed by the payee, but according to the testimony of Mr. Campbell the cashier’s check was picked up by Mr. Madden to carry to Citizens & Peoples National Bank, presumably to be applied in some manner on the indebtedness owed by Mr. Madden before Mr. Madden could further proceed with the transaction with Mr. Parker. Mr. Madden later returned the cashier’s check to Mr. Campbell with the statement that he could not use it. This indicates to us, together with the uncertainties as voiced by Mr. Campbell about the mortgages, mechanic’s liens and as to what Mr. Madden intended to do with the cashier’s check, that there was never a full meeting of the minds which resulted in an enforceable agreement to sell real estate. Even if the contentions of the appellee were awarded enough strength to take the agreement out of the Statute of Frauds, the evidence does not support the appellee’s prayer for specific performance because there was no binding agreement. Coupled with the lack of evidence to sustain a completed contract and the affirmative defense of the Statute of Frauds raised by the defendant, we feel compelled to and do hereby reverse all the provisions of the order appealed from except paragraph 7 of the order which directs Mr. Ferrin C. Campbell to release to the plaintiff any money deposited in his trust account for the consummation of the alleged transaction, which money in fact belongs to the appellee.
Reversed in part, affirmed in part.
SPECTOR, Acting C. J„ and BOYER, J., concur.