566 So.2d 806 (1990)
Gerald J. ZELL, Appellant,
v.
Charles E. COBB, Jr.; John W. Temple; Bill Shubin; Gary D. Engle; Anthony F. Ettorre; Douglas W. Moore; Houston B. Park, III; R. Scott Morrison, Jr.; Z.O. Hamilton; Sanford B. Miot; Roger E. Hall; Walter C. Collins; Robert U. Wilhelm; Vincent P. Donahue, Jr.; and Arvida Corporation, N/K/a Ardc Corporation, Appellees.
No. 89-1069.
District Court of Appeal of Florida, Third District.
May 29, 1990.
Rehearing Denied October 4, 1990.
Kenny Nachwalter & Seymour, P.A., and Thomas H. Seymour, Kevin J. Murray, and Harry R. Schafer, Miami, for appellant.
Cadwalader, Wickersham & Taft and James W. Beasley, Jr., and Steven M. Katzman, Palm Beach, for appellees.
Before BARKDULL, JORGENSON and LEVY, JJ.
JORGENSON, Judge.
Gerald Zell appeals from an order of final summary judgment entered in favor of Arvida Corporation ("Arvida") and fourteen of Arvida's senior management executives ("Arvida management defendants") in an action for breach of contract and breach of fiduciary duty. We affirm.
In 1981, Zell was employed as a real estate broker by Arvida. At that time, Arvida was owned by a subsidiary of Penn Central Corporation. In October of 1983, Penn Central agreed to sell, in the form of a leveraged buy-out, all of Arvida's stock to the Bass Brothers and the Arvida management defendants for $181 million.
On November 2, 1983, the Arvida management defendants circulated a memorandum to certain additional Arvida executives explaining the status of the leveraged buy-out transaction. The stated purpose *807 of the November 2 memo entitled "Status Report" was "to bring you up to date on the proposed Arvida management/Bass Brothers purchase of Arvida Corporation." The Status Report offered to each key executive who received the memo the opportunity to participate in the leveraged buy-out of Arvida by making a minimum investment of $50,000. The memo also referred to a federally imposed restriction on the number of investors allowed to participate in the leveraged buy-out so that the new business structure would maintain its Sub-chapter S status. The Status Report disclosed that financing terms for the buy-out remained uncertain and explained that "certain individuals were in the process of developing a more detailed analysis of our financial position."
Zell, who did not receive the memo, approached one of the appellees, expressed his interest in investing, and obtained a copy of the November 2 Status Report. On November 9, 1983, Zell gave a check for $50,000, payable to the Arvida Corporation, to Arvida's treasurer. Zell's check was deposited into an interest bearing escrow account.
In early December, 1983, Zell was informed by the Arvida management defendants that he would not be permitted to participate in the buy-out.[1] Zell's $50,000 deposit, which had remained at all times in escrow, was returned to him on December 12, 1983, along with 12% interest for the period between November 9 and December 12, 1983.
On December 9, 1983, all persons who were offered an opportunity to invest in the buy-out received a copy of a Confidential Private Placement Memo which explained the transaction in detail and disclosed the material risks involved. This memo revealed the financial structure of the buy-out, the type of equity to be purchased, and the price of the shares investors were to receive. As a prerequisite to investment, the participants were required to review the Confidential Placement Memo, agree to the specific terms and conditions of the transaction, and sign various subscription documents. Zell did not receive, review, or execute any of the foregoing documents.
The leveraged buy-out closed on December 16, 1983. On that date, the investors purchased shares in Arvida Acquisition Corporation (A.A.C.), formed on December 7, 1983, to take delivery of the outstanding shares of Arvida. Ultimately, A.A.C. merged with Arvida and the leveraged buy-out investors received pro rata shares of Arvida corporate stock.[2]
On September 30, 1986, Zell filed the instant action. Count I of Zell's fourth amended complaint alleged that the Arvida management defendants breached their contractual obligation to Zell by failing to deliver his pro rata equity interest in Arvida. Count II alleged that defendants Cobb and Temple, the authors of the November 2, 1983, Status Report breached their fiduciary duties by forcing Zell out of the Arvida investment. The Arvida management defendants moved for partial summary judgment on Counts I and II of Zell's fourth amended complaint.[3] The trial court granted the motion and entered final summary judgment on April 27, 1987.
Turning our attention to Count I of Zell's complaint for breach of contract, we must first determine whether there was a valid contract between Zell and the Arvida management defendants. Zell contends that the November 2, 1983, Status Report coupled with the check for $50,000 were sufficient to form a contract for the purchase of a pro rata equity interest in Arvida. Zell, relying on Blackhawk Heating & Plumbing Co. v. Data Lease Financial *808 Corp., 302 So.2d 404 (Fla. 1974), alleges that there was objective evidence that the parties intended to be bound and that, therefore, the contract could not be held void for indefiniteness even though all of the details of the leveraged buy-out were not definitely fixed when Zell tendered his check for $50,000 to the appellees. We cannot agree.
The Florida Supreme Court in Blackhawk held that "even though all of the details are not definitely fixed, an agreement may be binding if the parties agree on the essential terms and seriously understand and intend the agreement to be binding on them." Blackhawk, 302 So.2d at 408. Similarly, the Uniform Commercial Code, section 672.204, Florida Statutes (1985), governing the formation of contracts for sales[4] provides in pertinent part:
(3) Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy.
Applying the foregoing rules of law to this case, we find that there was not a valid contract for the sale of an equity interest in Arvida. The November 2 Status Report which Zell claims constituted an offer contained none of the terms of the complex leveraged buy-out, reserved the right to limit the number of investors, and did not promise to allot shares to every person who subscribed. Moreover, Zell admits that as of November 9, 1983, when he gave his check for $50,000 to the appellees, he did not know the identity of the party or parties to be bound by the alleged contract; the identity of the corporation in which the shares were to be purchased; the number of shares to be sold; the price of the shares; the description of the shares to be purchased; the date on which the shares were to be purchased and delivered; or the terms and conditions of the leveraged buy-out. Based on these facts, we cannot conclude that the parties agreed on the essential terms of the Arvida investment or seriously intended to be bound at the time Zell tendered his check to the appellees.[5]See Webster Lumber Co. v. Lincoln, 94 Fla. 1097, 115 So. 498 (1927) (several writings at issue did not constitute binding contract, even where deposit paid, since there was no meeting of minds on essential terms); David v. Richman, 528 So.2d 25 (Fla. 3d DCA 1988) (no meeting of minds existed on material elements of contract for sale of real estate which did not include legal description of property and which left material portions of contract blank); Theocles v. Lytras, 518 So.2d 936 (Fla. 3d DCA 1987) (contract held unenforceable where parties failed to agree on all material and essential terms, including closing date and handling of certain business liabilities); Northland Capital Corp. v. Silver, 735 F.2d 1421 (D.C. Cir.1984) (contract to purchase securities unenforceable where no agreement on terms was reached and parties contemplated that closing was necessary to consummate transaction); Coyne v. Chatham Phenix Nat. Bank & Trust Co., 155 Misc. 656, 281 N.Y.S. 271 (N.Y. City Ct. 1935) (employees' signing of bank's offer to sell stock held not binding agreement where there was no absolute promise on part of bank to allot stock to every person subscribing). Compare Blackhawk Heating & Plumbing Co. v. Data Lease Financial Corp., 302 So.2d 404 (Fla. 1974) (where parties reached definite agreement on essential terms, one ambiguous term would not destroy agreement); Tipton v. Woodbury, *809 616 F.2d 170 (5th Cir.1980) (contract for purchase of securities would not fail for uncertainty where price, quantity, and sufficient description of stock were given and only missing term could not be supplied until after certificate was obtained).
Although the subsequent actions of the parties may be considered to determine their intentions, see Lalow v. Codomo, 101 So.2d 390 (Fla. 1958); Mesch v. Berry, 528 So.2d 1250 (Fla. 1st DCA 1988), the act of depositing Zell's check into escrow did not establish appellees' intent to include Mr. Zell in the investment. The effect of depositing a check into escrow is to place the funds into the hands of a third person until the occurrence of a certain event and then to deliver them out of escrow to the promisee. Love v. Brown Development Co. of Michigan, 100 Fla. 1373, 1378-79, 131 So. 144, 146 (1930); 22 Fla.Jur.2d Escrow § 13 (1980). Until the event happens or the condition is performed, the instrument deposited in escrow does not take effect as a fully executed contract. Love, 100 Fla. at 1379, 131 So. at 146. Moreover, when nothing passes out of escrow, no interest passes. Grossman v. Pollack, 100 So.2d 660, 661 (Fla. 3d DCA 1958). The record reflects that the appellees deposited all of the checks tendered by the leveraged buy-out investors into escrow to insure that funds would be available without delay if an interested party was later offered the opportunity to participate in the buy-out. It is also evident that none of the funds held in escrow which were attributable to Zell ever passed to the appellees. Therefore, because Zell was not offered the opportunity to invest and because his deposit did not pass out of escrow, the condition did not occur and a contract was not formed. Compare Blackhawk, 302 So.2d at 408 (courts should be extremely hesitant in holding contract void for indefiniteness where one party has performed and allowed other party to obtain benefit of his performance) (emphasis supplied).
In a final attempt to create a valid contract, Zell relies on certain future events which he claims made the terms of the alleged contract sufficiently certain to bind the parties. Specifically, Zell contends that the number of shares to be received, the type of equity interest to be received, and the price per share were all rendered certain when the leveraged buy-out was finalized. In other words, Zell alleges that on November 9, 1983, when the Arvida management defendants accepted his check for $50,000, he had the right to receive whatever number of shares (or equity interest) that specific amount of money represented as determined by the same terms as those governing the investment of any other member of the purchasing group. This argument also fails. The future events Zell relies upon, most of which occurred after he accepted the return of his money, involved only the actual participants in the leveraged buy-out, and not Zell. Therefore, these facts do not support the contention that Zell reached a definite agreement with the appellees on November 9, 1983, or at any time thereafter. Finally, Zell's failure to receive any of the detailed documents executed by the ultimate investors further supports our conclusion that no agreement had been reached between Zell and the appellees.
Accordingly, we conclude that where, as here, there was no meeting of the minds on the essential terms of the alleged contract and the funds held in escrow never passed to the appellees, no enforceable agreement existed and the trial court properly entered summary judgment. See Madden v. Parker, 292 So.2d 392 (Fla. 1st DCA), cert. denied, 297 So.2d 309 (Fla. 1974) (appellee's prayer for specific performance of oral contract to sell real estate denied, even where deposit paid, where minds of parties never met).
As to Count II of the complaint for breach of fiduciary duty against appellees Cobb and Temple, we conclude that summary judgment was likewise properly entered. The record shows that the claim for breach of fiduciary duty arose solely by virtue of the existence of the alleged contractual relationship between the parties. In particular, the complaint alleged that Cobb and Temple, as promoters of the leveraged buy-out and as officers of Arvida, breached their fiduciary duty to Zell by implementing a plan to deprive him of his shares; refusing to deliver the shares which he purchased; threatening to terminate *810 employment if he did not sign a release relating to the shares; excluding him from meetings regarding the investment; failing to give him all pertinent information and to keep him informed of the status of his investment; and wrongfully distributing his shares to other employees of Arvida. Because Zell has not demonstrated any fiduciary duty or breach thereof that is distinct from that which he alleges as the basis for his breach of contract action, his breach of fiduciary duty claim is barred based upon our finding that there was no contract. Cf. DeRibeaux v. Del Valle, 531 So.2d 992 (Fla. 3d DCA 1988) (appellant's cause of action for breach of fiduciary duty was improperly dismissed where valid joint venture agreement existed and where fiduciary relationship between the parties arose by virtue of the existence of the joint venture agreement). Because our finding that no contract existed is dispositive, we do not reach appellant's remaining points on appeal.
The Arvida management defendants amply demonstrated that no contract existed. Accordingly, there were no genuine issues of material fact, and the trial court correctly entered summary judgment for the Arvida management defendants.
Affirmed.
NOTES
[1] Three other Arvida employees who expressed an interest in the buy-out by tendering deposits into escrow were also told that they were not eligible to participate.
[2] Five months later, Arvida merged with Walt Disney Corporation.
[3] Zell's fourth amended complaint contained twelve counts. Two counts were tried before a jury, with Arvida prevailing. That order is part of a separate appeal. The remaining counts of Zell's complaint were dismissed by summary judgment. Zell has appealed only Counts I and II.
[4] Article 8 of Florida's Uniform Commercial Code does not provide guidelines for determining the essential elements of a contract for the sale of investment securities. However, the comments to section 672.105, Florida Statutes, the section that defines "goods" states: "`Investment securities' are expressly excluded from coverage of this Article. It is not intended by this exclusion, however, to prevent the application of a particular section of this Article by analogy to securities ... when the reason of that section makes such application sensible and the situation involved is not covered by the Article of this Act dealing specifically with such securities... ."
[5] The intention of the parties at the time the agreement is entered into is controlling. See J & S Coin Operated Machines, Inc. v. Gottlieb, 362 So.2d 38 (Fla. 3d DCA 1978); Coast Cities Coaches, Inc. v. Whyte, 102 So.2d 848 (Fla. 3d DCA 1958).