KLEIN, Judge.
A jury found that appellee was entitled to a bonus of $500,000 to be paid by her former employer, Arvida, for her efforts leading to a sale of real estate. Because the proof on which she relied to establish some of the terms of the alleged agreement to pay was oral, rather than written, her claim is barred by the four year statute of limitations applicable to oral contracts. We therefore reverse.
Appellee Hogan was employed full-time by Arvida as director of commercial industrial properties at Weston, in Broward County, where Arvida owned 10,000 acres. It was Hogan’s responsibility to sell 1,000 of those acres, which were commercial and industrial, for which she was paid a salary of $47,000 a year, plus a bonus of up to 35% of her salary depending on her performance.
Hogan interested Tishman Speyer Properties in budding a large project involving medical products and services in the area to be called EcuMed, and in July of 1983, a Delaware general partnership named Tishman Speyer Crown Equities, a joint venture between Tishman Speyer and the Crown famdy of Chicago (Tishman Crown), entered into an option agreement with Arvida. The option involved 461 of the 1,000 acres, and could only be exercised in three phases. The first phase gave Tishman Crown the option to purchase a minimum of 100 and a maximum of 174 acres, for $110,000 an acre. In order for Tishman Crown to exercise the second phase of the option agreement, and purchase additional land, it would first have to develop 1,500,000 square feet of buddings, which comprised the EcuMed project. The construction of EcuMed would have significantly increased the value of the remaining property owned by Arvida, because it would have created thousands of jobs and a demand for homes on the 9,000 acres of residential property.
Five months later, whde the Tishman Crown option was stdl viable, but had not been exercised, a different entity, Tishman Speyer Equitable South Florida Venture (Tishman Equitable), a partnership between Tishman Speyer and the Equitable Life Insurance Company, purchased the entire 1,000 acres of commercial and industrial property owned by Arvida, which included the 461 acres which were under option to Tishman Crown. The contract to purchase the 1,000 acres was signed and closed on the same day, December 15, 1983, with Tishman Equitable paying $30,000 an acre,[1] and the purchase *1373 was subject to the Tishman Crown option. Tishman Crown never exercised its option, however, and EeuMed was never built.
Because Hogan’s function with Arvida was to sell the 1,000 acres, Arvida no longer needed her after the sale to Tishman Equitable. Tishman Equitable then hired Hogan in the same capacity as she had been employed by Arvida. Hogan acknowledged that Tish-man Crown and Tishman Equitable are separate, distinct entities.
In December of 1988, more than four years after the sale, Hogan filed this lawsuit against Arvida, alleging that Arvida owed her a bonus of $500 per acre for the sale of the 1,000 acres to Tishman Equitable. She based her claim on a memo given to her by Arvida on August 16,1983, which referred to the Tishman Crown option involving EeuMed, a subsequent clarifying memo, and oral testimony which, she alleges, explains ambiguities in the memos and connects them to the sale to Tishman Equitable. Arvida defended on the ground that Hogan’s claim was not based on a written agreement, and was thus barred by the four year statute of limitations applicable to oral contracts, section 95.11(3)(k), Florida Statute (1993). Hogan asserted that the memos constituted a written agreement and that her claim was governed by a five year period of limitations, section 95.11(2)(b).
The August 16, 1983 memo from Arvida to Hogan, on which her claim is grounded, was given to Hogan shortly after the execution of the July 1983 option agreement with Tish-man Crown and provided:
You represented Arvida and performed in a superb professional manner through negotiations and in finalizing the Tishman option for EeuMed at Weston.
In recognition of our appreciation, Arvida will award you a special bonus of one thousand dollars ($1,000.00) per acre purchased by Tishman for the first option phase takedown. This bonus will be paid 50% at closing and 50% at commencement. Threshold requirements for construction shall be in excess of one million square feet of exhibit facility and in excess of a 500 room hotel.
This bonus will be paid provided only if you are employed by Arvida and involved in Weston development at the time of the payment trigger event. This special bonus is above and beyond your other compensation components presently in effect, however, the normal override commission on land will not be in effect on subject Phase I of EeuMed.
After the December sale of the 1,000 acres to Tishman Equitable, when Hogan was terminated by Arvida and became employed by Tishman Equitable, Arvida gave her another memo on January 6, 1984:
This will confirm my verbal comments related to the EeuMed special bonus proposed in the memo of August 16 (attached).
Arvida will award you a special bonus of one thousand dollars ($1,000.00) per acre purchased by Tishman for the first option phase takedown (all or part of Parcel “A”). This bonus will be paid 50% at closing and 50% at commencement. Threshold requirement for construction shall be in excess of one million square feet of exhibit facility and in excess of a 500 room hotel. Although the memo stated that you were required to be employed by Arvida at the time of takedown and commencement in order to received the bonus, due to the ownership change in the property Arvida will award the bonus at takedown and commencement if you are employed by Equitable/Tishman Speyer at the time of the payment trigger event and if you are spending at least 50% of your time involved in the Weston developmenVmarket-ing program.
Hogan testified that the purpose of this memo was to clarify that it would not be necessary for her to be employed by Arvida, as the first memo required, in order to be eligible to collect her bonus under the August memo.
We cannot agree with Hogan’s premise that the words “first option phase take- *1374 down” and “closing” in the August memo were ambiguous in such a way as to open the door to oral testimony which would make the December sale to Tishman Equitable the event which would entitle her to a bonus. If the Tishman Crown option had been exercised, it is possible that something may have occurred in the manner in which that option was exercised which would have warranted an explanation as to some of the terms in the August memo. The Tishman Crown option, however, was never exercised, the “first option phase takedown” never occurred, and construction of EcuMed was never commenced. Accordingly, Hogan never became entitled to the bonus which was the subject of the August memo.
Although Arvida might well have orally agreed to pay Hogan a bonus for the December sale, that event bore no resemblance to the event which would have entitled her to a bonus under the August memo. The memo provided for a bonus of $1,000 an acre for the option’s first phase only, and the maximum number of acres which could have been purchased if the first phase of the option had been exercised was 175. The December sale was for 1,000 acres. Furthermore, the option price was $110,000 an acre, while the sale price was $30,000 an acre. And, as Hogan acknowledged, the option for EcuMed survived the December sale and could still have been exercised by Tishman Crown after Tishman Equitable became the owner of the property.
The fact that Hogan must rely on oral representations to create the agreement on which her claim is based, means, for the purposes of the statute of limitations, that the alleged contract is oral, not written. As the Florida Supreme Court explained in Johnson v. Harrison Hardware and Furniture Co., 119 Fla. 470, 160 So. 878, 879 (Fla. 1935):
In applying the statute of limitations, where the evidence of liability relied on is partly set forth in writings in the form of letters and the like, but the writings are incomplete in themselves, or are otherwise so indefinite as to necessitate and make unavoidable plaintiffs resort to oral testimony to make complete the showing of any legal liability incurred by the defendant, under the terms of the transaction of which the writings are made a part, such agreement, partly written and partly oral, must be regarded as an oral contract, the liability arising under which is not founded upon an instrument of writing, and the action to recover thereon must therefore be held to be barred by the statute of limitations unless shown to have been brought within three years....
Similarly, in Gulf Life Insurance Co. v. Hillsborough County, 129 Fla. 98, 176 So. 72, 75 (Fla.1935), the court noted that a contract action is not founded upon a written instrument, for purposes of the statute of limitations, where the written instrument is “a link in the chain of evidence to prove the cause of action,” but does not on its face establish all of the elements of plaintiffs claim. See also Klein v. Frank, 534 F.2d 1104 (5th Cir.1976).
The oral testimony utilized by Hogan in this case did not explain an ambiguity, but rather constituted the only evidence of an essential element of her alleged contract, the condition which had to occur in order to entitle her to a bonus. Accordingly, even if Arvida orally committed to pay Hogan a bonus for the sale, her claim is barred by the four year period of limitations. Johnson and Gulf Life. We therefore reverse and remand for entry of a judgment in favor of appellant.
' GLICKSTEIN and WARNER, JJ., concur.

. The reason Arvida was willing to sell the 1,000 acres for $30,000 an acre, less than one-third the price of the 461 acres which were the subject of the option agreement, was because in the fall of 1993 a number of Arvida executives organized a management leveraged buyout of Arvida. The $30,000,000 that they realized from the sale of the 1,000 acres at $30,000 an acre in December to Tishman Equitable was critical to management being able to consummate the buyout. The buyout closed one day after the sale of the 1,000 acres. Hogan, in another count of her complaint, alleged that Arvida and its executives promised her she could participate in the buyout and then reneged. We affirmed a summary judgment entered against Hogan on the buyout *1373 claim in Hogan v. ARDC Corporation, 637 So.2d 9 (Fla. 4th DCA 1994), merely citing Zell v. Cobb, 566 So.2d 806 (Fla. 3d DCA 1990), review denied, 577 So.2d 1331 (Fla.1991), in which the third district explained the terms of the buyout and why Zell and others similarly situated did not have a cause of action.