DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**HENRY MCDOWELL,**
Appellant/Cross-Appellee,

v.

**ROGER MOORE** and **JEFF GARCIA,** individually, and
**NAUTICAL VENTURES SOUTH, INC.,** a Florida corporation,
Appellees/Cross-Appellants.

No. 4D2023-2783

[May 6, 2026]

Appeal and cross-appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Mark Alan Speiser, Judge; L.T. Case No. 062014CA008507AXXXCE.

Kelly Ann Lenahan and David Francis Cooney of Cooney Trybus Law, Fort Lauderdale, for appellant/cross-appellee.

Nancy W. Gregoire Stamper of Birnbaum, Lippman, & Gregoire, PLLC, Fort Lauderdale, and Richard Alan Ivers of the Law Office of Richard A. Ivers, Coconut Creek, for appellees/cross-appellants.

KLINGENSMITH, J.

This appeal and cross-appeal arise from a complex commercial dispute concerning the enforceability of a purported commission agreement, the scope of fiduciary duties among shareholders, and the procedural propriety of several trial court rulings. The plaintiff, Henry McDowell, seeks review of multiple adverse rulings including the entry of directed verdicts in favor of the individual defendants, Roger Moore and Jeff Garcia, while the corporate defendant, Nautical Ventures South, Inc. ("NVS"), challenges the denial of its motion for directed verdict. After careful review of the record, the briefs, and the applicable law, we affirm the trial court's entry of directed verdicts for Moore and Garcia, and reverse the denial of NVS's motion for directed verdict. We affirm as to all other issues raised without comment.

## I.       Statement of Facts

This case arises from a business relationship formed in the context of evolving contractual expectations concerning compensation through commissions. McDowell was the founder and original owner of NVS, a small business engaged in the sale of water sports equipment. At the time relevant to this dispute, NVS was experiencing significant financial difficulties, with McDowell unable to operate the business effectively on his own. At that point, McDowell sought either to bring in additional partners or sell the company.

In late 2010, McDowell entered discussions with Moore and Garcia to transfer 80% of his ownership interest in NVS in exchange for a payment of $5,000 and other consideration. The parties memorialized their agreement in two documents, a Letter of Intent and a Shareholders' Agreement. The Letter of Intent stated that Moore and Garcia, through an affiliated entity, would provide a loan to NVS to alleviate its financial obligations. They would also assume roles as officers and directors, while McDowell would remain involved in the business as president and director.

Central to the dispute is the Letter of Intent's paragraph 13, which addressed McDowell's compensation following the transfer of ownership. That provision stated McDowell would receive a commission on wholesale, rental operations, and export sales. However, the parties expressly acknowledged that they had not yet agreed upon a commission schedule due to time constraints, and would endeavor to do so in good faith after the agreement's execution. The provision further stated that the failure to finalize such a schedule would not render the agreement unenforceable to the extent permitted by law. The Shareholders' Agreement incorporated the Letter of Intent and included a severability clause preserving the enforceability of valid provisions.

The trial evidence demonstrated that, prior to the Letter of Intent's execution, the parties exchanged communications regarding potential commission structures. McDowell indicated that industry norms ranged between approximately seven and a half percent and twelve percent, and expressed a desire to earn income comparable to his prior earnings through commissions. Moore testified that the parties had anticipated McDowell might earn between $75,000–$100,000 annually depending on sales performance, but no specific commission percentage or formula was finalized. Draft agreements and handwritten notes reflected ongoing negotiations and differing views regarding appropriate commission levels, but no definitive agreement was reached prior to the agreement's execution.

Following the agreement's execution, the parties continued to operate NVS, but disputes arose regarding the nature and amount of McDowell's commissions. Initially, McDowell received payments that were at times calculated at a rate of ten percent, though Moore characterized this as a temporary measure to test such payments' financial feasibility. Thereafter, the commission rate was reduced to five percent, with conflicting testimony as to whether McDowell had agreed to that reduction or was coerced into accepting it. Additional disputes arose concerning whether McDowell was entitled to commissions on all qualifying sales, or only on those sales in which he was personally involved, as well as whether certain product lines with lower profit margins should be excluded from commission calculations.

The parties also disagreed over NVS's financial practices, including the use of a monthly draw to supplement McDowell's income, which draw was later discontinued due to cash flow concerns. Communications between the parties reflect ongoing disagreements regarding the commission arrangement's interpretation, certain product lines' profitability, and the overall financial viability of paying commissions at the levels which McDowell desired. Despite these disputes, McDowell continued to submit commission reports, at times structuring the reports according to proposed compromises that were never formally accepted.

In September 2013, at a joint meeting of shareholders and directors, Moore and Garcia voted to terminate any existing commission arrangements. By that time, the relationship between the parties had deteriorated significantly. McDowell thereafter asserted that he was owed substantial unpaid commissions, both for the period prior to termination and for subsequent years, calculating his damages based in part on NVS's reported sales figures.

When the relationship between the parties became irreconcilable, McDowell filed suit, asserting claims for breach of contract, fraudulent inducement, and breach of fiduciary duty against Moore and Garcia, as well as a breach of contract claim against NVS.

At trial, the court directed a verdict for Garcia on all counts against him. The jury returned a verdict against NVS, finding that a binding agreement existed, and awarded damages for breach of contract. The trial court entered final judgment in accordance with that verdict. The jury also found liability for breach of contract, fiduciary duty, and fraud against Moore, but the trial court granted a renewed motion for directed verdict post-trial for Moore. This appeal and cross-appeal followed.

## II. Analysis

### a. Directed Verdicts for Moore and Garcia

We begin with McDowell's contention that the trial court erred in granting directed verdicts for Moore and Garcia on the various claims against them. A trial court's ruling on a motion for directed verdict is reviewed de novo. *See MasTec N. Am., Inc. v. Morakis*, 288 So. 3d 685, 688 (Fla. 4th DCA 2019). A directed verdict is proper only when, viewing the evidence in a light most favorable to the nonmoving party, no reasonable jury could render a verdict for that party. *Id.* (quoting *Houghton v. Bond*, 680 So. 2d 514, 522 (Fla. 1st DCA 1996)).

#### i. Breach of Contract

To prevail on a breach of contract claim, a plaintiff must establish the existence of a valid contract, a material breach, and damages. *See Deauville Hotel Mgmt., LLC v. Ward*, 219 So. 3d 949, 953 (Fla. 3d DCA 2017). A valid contract requires offer, acceptance, consideration, and sufficiently definite essential terms. *Triton Stone Holdings, L.L.C. v. Magna Bus., L.L.C.*, 308 So. 3d 1002, 1006 (Fla. 4th DCA 2020).

The breach of contract claim's central issue is whether the Letter of Intent's paragraph 13 constituted an enforceable agreement obligating Moore and Garcia to pay commissions to McDowell. Resolution of this issue turns on the fundamental principles governing contract formation under Florida law, particularly the requirement that a contract contain sufficiently definite essential terms to permit enforcement. As such, the threshold inquiry on this issue is whether the parties formed a valid contract as to McDowell's commissions.

Florida courts have consistently emphasized that mutual assent requires a meeting of the minds on all essential terms. *See Triton*, 308 So. 3d at 1007–08; *Vision Palm Springs, LLLP v. Michael Anthony Co.*, 272 So. 3d 441, 444 (Fla. 3d DCA 2019); *King v. Bray*, 867 So. 2d 1224, 1227–28 (Fla. 5th DCA 2004). Where essential terms are left open for future negotiation, no enforceable contract exists because the court cannot supply material provisions upon which the parties failed to agree. *See Certified Motors, LLC v. Aventine Hill, LLC*, 369 So. 3d 1254, 1257 (Fla. 2d DCA 2023) (reiterating that it is not the role of the court to create a contract where the parties have failed to do so). This principle is particularly important in commercial settings, where the specificity of terms often defines the scope of the parties' obligations.

4

In this case, the Letter of Intent's paragraph 13 expressly provides that the parties had not agreed upon a commission schedule and would endeavor to do so in good faith at a later time. The provision identifies sales categories on which commissions might be paid, but omits any specification of the commission rate, the calculation method, the duration, or any objective mechanism by which those terms could be determined. Each of these components constitutes an essential term in a compensation agreement of this nature.

Florida law is also clear that provisions leaving essential terms open for future agreement are unenforceable as "agreements to agree." In *John Alden Life Insurance Co. v. Benefits Management Associates, Inc.*, 675 So. 2d 188, 189 (Fla. 3d DCA 1996), the court held that a contractual provision requiring the parties to negotiate a future bonus was unenforceable because it lacked definite terms and merely reflected an intent to reach an agreement later. Similarly, in *Certified Motors*, the court reaffirmed that an agreement to agree on material terms at a future date is not a binding contract. 369 So. 3d at 1258.

The reasoning underlying this rule is straightforward and compelling. A contract must provide a basis for determining whether a breach has occurred and for calculating damages. Where essential terms are indefinite, a court would be required to speculate as to the parties' intent, effectively rewriting the agreement. *See State, Dep't of Corr. v. C & W Food Serv., Inc.*, 765 So. 2d 728, 730 (Fla. 1st DCA 2000) ("The court could not afford a remedy for the breach of a promise to negotiate a contract, because there would be no way to determine whether the parties would have reached an agreement had they negotiated."). This would undermine the principle that contracts derive force from the parties' mutual assent rather than judicial construction.

The record here confirms that the parties never reached an agreement on the essential terms of McDowell's commission. Pre-execution communications reflect ongoing negotiations and differing expectations. McDowell referenced industry norms as a benchmark for the commission percentages which he sought. Moore, by contrast, testified that any commission structure would need to be tied to profitability, and the parties did not agree upon any specific percentage. Draft agreements and handwritten notes similarly demonstrate that the parties contemplated different potential structures, but failed to finalize any.

This lack of agreement is further underscored by the parties' conduct after the Letter of Intent's execution. The evidence shows that commission

5

payments were inconsistent, subject to unilateral modification, and the subject of ongoing dispute. At various times, McDowell received commissions calculated at different rates, including ten percent and later five percent, with conflicting testimony as to whether the parties had mutually agreed upon these changes. The parties also disagreed about whether commissions applied to all qualifying sales or only those personally generated by McDowell. These disputes illustrate the absence of any agreed-upon framework governing commissions.

McDowell argues that the Letter of Intent should nevertheless be enforced, because it states that the parties' inability to agree on a commission schedule would not render the agreement unenforceable. However, that language is expressly qualified by the phrase "to the extent enforceable by law." Florida law does not permit enforcement of an agreement that lacks essential terms, and parties cannot contract around this requirement. *See Certified Motors*, 369 So. 3d at 1258. Thus, the savings clause does not cure the provision's fundamental indefiniteness.

McDowell further contends that the commission arrangement constituted part of the consideration for the transfer of his NVS ownership interest. Even if we accept that characterization, it reinforces, rather than undermines, the conclusion that the provision is unenforceable. Consideration, particularly in the context of a stock sale, must be sufficiently definite to permit enforcement.

For example, in *Zell v. Cobb*, 566 So. 2d 806, 808 (Fla. 3d DCA 1990), the court held no enforceable contract for the purchase of shares existed, in part because the parties had not agreed to the shares' price. Similarly, in *Bee Line Air Transport, Inc. v. Dodd*, 496 So. 2d 874, 875 (Fla. 3d DCA 1986), the court held that a contract lacking a specified purchase price *or* an objective method for determining said price was unenforceable.

Here, the alleged commission served as part of the purchase price, yet the parties did not agree upon any amount or calculation method. This absence of definiteness is fatal to contract formation.

McDowell's reliance on the implied covenant of good faith and fair dealing is likewise misplaced. That covenant cannot create contractual obligations where none exist, because the covenant attaches only to the performance of express contractual terms, and cannot serve as an independent basis for liability. *See Ins. Concepts & Design, Inc. v. Healthplan Servs., Inc.*, 785 So. 2d 1232, 1235 (Fla. 4th DCA 2001). Because the parties never agreed upon enforceable commission terms, no contractual duty exists upon which the covenant could operate.

Finally, McDowell argues that Moore and Garcia breached the agreement by failing to negotiate a commission schedule in good faith. However, even assuming such a duty existed, it arises solely from the unenforceable provision itself. Florida courts have declined to enforce obligations to negotiate in good faith where the underlying agreement lacks essential terms, as doing so would indirectly enforce an otherwise invalid contract. *See C & W Food Serv.*, 765 So. 2d at 729–30 (explaining that an obligation to negotiate in good faith is, at most, an agreement to agree in the future and is not enforceable because the parties had not yet agreed on the essential terms). The absence of a definite agreement precludes imposing liability for failure to negotiate its terms.

The trial court correctly concluded that no enforceable contract existed with respect to McDowell's commissions. Without a valid contract, no breach could occur as a matter of law. Accordingly, the directed verdicts for Moore and Garcia on the breach of contract claim were proper.

### ii. Breach of Fiduciary Duty

We next consider whether the trial court erred in granting directed verdicts for Moore and Garcia on McDowell's breach of fiduciary duty claim. On this claim, the question presented is whether, viewing the evidence in the light most favorable to McDowell, a legally sufficient basis existed for a reasonable jury to return a verdict for McDowell.

To prevail on this claim under Florida law, a plaintiff must establish the existence of a fiduciary duty, a breach of that duty, and damages proximately caused by the breach. *Brouwer v. Wyndham Vacation Resorts, Inc.*, 336 So. 3d 372, 373 (Fla. 5th DCA 2022). It is well established that majority shareholders in a closely held corporation owe fiduciary duties to minority shareholders, including the duty not to use the majority's control to the minority's detriment. *Granicz v. Moore*, 603 So. 2d 103, 104 (Fla. 2d DCA 1992).

Although McDowell correctly asserts that Moore and Garcia, as majority shareholders, owed fiduciary duties to McDowell, the existence of such duties does not end the inquiry. The critical question is whether the alleged breach of fiduciary duty is legally cognizable and sufficiently distinct from other claims, particularly where, as here, the same underlying conduct forms the basis of a breach of contract claim.

A breach of fiduciary duty claim cannot be maintained where it is wholly dependent upon, and not independent from, an alleged contractual

7

relationship that is itself unenforceable. In *Zell*, the court rejected a fiduciary duty claim that arose from an alleged contractual relationship, reasoning that where no contract exists, a plaintiff cannot repackage the same allegations as a breach of fiduciary duty. 566 So. 2d at 809–10. The court explained that absent a duty or breach independent of the alleged breach of contract, the fiduciary duty claim necessarily fails. *Id.*

The reason for this result is rooted in the distinction between duties imposed by law and those arising from agreement. A tort claim, such as breach of fiduciary duty, must rest on obligations that exist independently of the parties' contractual expectations. *See Frutafino, S.A.S. v. Dole Chile, S.A.*, 405 So. 3d 497, 500 (Fla. 3d DCA 2025) ("It is a fundamental, longstanding common law principle that a plaintiff may not recover in tort for a contract dispute unless the tort is independent of any breach of contract.") (quoting *Island Travel & Tours, Ltd., Co. v. MYR Indep., Inc.*, 300 So. 3d 1236, 1239 (Fla. 3d DCA 2020)). If an alleged breach of fiduciary duty merely mirrors the failure to perform under an unenforceable agreement, then recognizing such a claim would effectively circumvent the requirement that contracts contain definite essential terms. In other words, a party cannot obtain through tort what it cannot obtain through contract.

In this case, McDowell's fiduciary duty claim is not independent of the alleged commission agreement. The operative complaint alleges that Moore and Garcia breached their fiduciary duties by failing to pay commissions and by terminating the commission arrangement. On appeal, McDowell also argues that Moore and Garcia failed to negotiate a commission schedule in good faith. However, each of these theories derives directly from the Letter of Intent's paragraph 13, which we have already determined is an unenforceable agreement to agree.

The obligation to negotiate a commission schedule did not arise from any general fiduciary duty owed by majority shareholders. Rather, the obligation arose solely from paragraph 13. Because that provision is unenforceable, it cannot serve as the foundation for imposing liability under a fiduciary duty theory. *See Zell*, 566 So. 2d at 810. As previously stated, to hold otherwise would allow McDowell to enforce indirectly, through a fiduciary duty claim, a contractual obligation that is unenforceable as a matter of law. This is precisely the result that *Zell* prohibits. 566 So. 2d at 810.

Moreover, the pleadings and evidence do not establish any breach of fiduciary duty independent of the commission dispute. McDowell does not allege that Moore and Garcia engaged in self-dealing, diverted corporate

8

opportunities, or otherwise exercised their control in a manner that harmed him as a minority shareholder apart from the commission issue. The absence of such independent misconduct further underscores that the fiduciary duty claim is merely duplicative of the contract claim. *See Frutafino,* 405 So. 3d at 500 (explaining that a tort claim "must go beyond and be independent from the failure to comply with the contract").

Even if we were to assume that a fiduciary duty could arise in connection with negotiations between the parties, McDowell's claim would still fail because the theory which he advances on appeal was not properly pled. Florida law requires that a party's claims be set forth in the pleadings with sufficient specificity to provide notice to the opposing party. *See Schneider v. First Am. Bank,* 336 So. 3d 43, 47 (Fla. 4th DCA 2022). A trial court lacks authority to award relief on an unpled theory unless the issue was tried by consent. *Id.*

Here, McDowell's operative complaint alleges that Moore and Garcia breached their fiduciary duties by failing to pay commissions owed under the agreement. The complaint does not allege that they breached a duty by failing to negotiate a commission schedule in good faith. This distinction is significant. A claim based on failure to pay under agreed terms is materially different from a claim based on failure to reach agreement in the first instance. The former presupposes the existence of agreed terms, while the latter challenges the negotiation process itself.

The record further reflects that McDowell attempted to add a failure to negotiate theory through a proposed amended complaint, which the trial court denied. Under these circumstances, allowing McDowell to proceed on that theory at trial would undermine the purpose of the pleading requirements and result in unfair surprise to the defendants. *Schneider,* 336 So. 3d at 47.

McDowell's assertion that the issue was tried by consent does not salvage the claim. Although issues not raised in the pleadings may be tried by consent where evidence is introduced without objection, this doctrine does not apply where the evidence is relevant to issues already in the case. *Anchor Prop. & Cas. Ins. Co. v. Trif,* 322 So. 3d 663, 670 (Fla. 4th DCA 2021). The evidence concerning the parties' negotiations was plainly relevant to the breach of contract claim and therefore cannot be construed as consent to try a separate fiduciary duty theory. Additionally, the trial court expressly preserved the defendants' objections to McDowell's unpled claims, further negating any inference of consent.

Finally, even if the fiduciary duty claim were otherwise viable, the absence of an enforceable contract would preclude recovery of the damages sought. McDowell's damages theory is based entirely on the commissions which he contends he should have received. Without a valid agreement establishing entitlement to those commissions, any award of damages would necessarily be speculative. Florida law does not permit recovery of speculative damages. *See Gonzalez v. Barrenechea*, 170 So. 3d 13, 16 (Fla. 3d DCA 2015); *W.W. Gay Mech. Contractor, Inc. v. Wharfside Two, Ltd.*, 545 So. 2d 1348, 1350–51 (Fla. 1989).

In sum, while Moore and Garcia owed fiduciary duties to McDowell as majority shareholders, the conduct alleged as a breach of those duties is not independent of the unenforceable commission agreement. The fiduciary duty claim is therefore barred as a matter of law under *Zell.* 566 So. 2d at 810. Additionally, the theory advanced on appeal was not properly pled and was not tried by consent. For each of these reasons, the trial court correctly entered directed verdicts for Moore and Garcia on the breach of fiduciary duty claim.

### iii. Fraudulent Inducement

We next address McDowell's claim that the trial court erred in granting directed verdicts for Moore and Garcia on McDowell's fraudulent inducement claim. The determinative question here is whether the evidence, viewed in the light most favorable to McDowell, was legally sufficient to support each element of fraudulent inducement. We conclude the trial court correctly directed verdicts on this claim for Moore and Garcia for four reasons.

Fraudulent inducement requires proof of a false statement concerning a material fact, knowledge by the representor that the statement is false, an intention that the representation induce another to act on it, and consequent injury to the party acting in justifiable reliance on the representation. *Prieto v. Smook, Inc.*, 97 So. 3d 916, 917 (Fla. 4th DCA 2012) (quoting *Shakespeare Found., Inc. v. Jackson*, 61 So. 3d 1194, 1199 n.1 (Fla. 1st DCA 2011)). The doctrine is designed to remedy situations in which a party is induced to enter into a contract by misrepresentations of existing fact. The doctrine does not extend to mere promises of future conduct or statements of opinion. *See Tres-AAA-Exxon v. City First Mortg., Inc.*, 870 So. 2d 905, 907 (Fla. 4th DCA 2004); *Vance v. Indian Hammock Hunt & Riding Club, Ltd.*, 403 So. 2d 1367, 1371–72 (Fla. 4th DCA 1981).

A critical limitation on fraudulent inducement claims, like breach of fiduciary duty claims, is that the alleged misrepresentation must be

10

independent of the promises contained in the contract itself. *See Frutafino*, 405 So. 3d at 500. A party cannot recast a breach of contract claim as a tort claim for fraud where the alleged misrepresentation relates to the same subject matter as the contract. *See B & G Aventura, LLC v. G-Site Ltd. P'ship*, 97 So. 3d 308, 309–10 (Fla. 3d DCA 2012). This too prevents tort law from being used to circumvent the limitations of contract law. This requirement is grounded in the distinction between a misrepresentation of present fact, which may support a fraud claim, and a promise of future performance, which generally does not. If every unfulfilled promise could be recast as fraud, the carefully defined boundaries of contract liability would be rendered meaningless. Accordingly, Florida law requires that the alleged fraud be separate and distinct from the breach of contractual obligations.

In this case, McDowell's fraudulent inducement claim is based on by Moore's and Garcia's alleged misrepresentations regarding the amount of commissions which McDowell would receive if he transferred his ownership interest in NVS. However, these statements, even when viewed in the light most favorable to McDowell, do not constitute actionable misrepresentations of existing material fact.

First, the alleged statements concerning anticipated commissions are, by their nature, forward-looking. The statements reflect expectations or projections regarding future performance, rather than representations of present fact. Such statements are not actionable as fraud unless the promisee proves the promisor had a present intent not to perform at the time the statement was made. *See Prieto*, 97 So. 3d at 917–18.

The record here is devoid of evidence that Moore or Garcia made any specific, definite representation regarding commissions with a present intent not to honor such represenation. To the contrary, the evidence demonstrates that the parties were engaged in ongoing negotiations and had not reached an agreement on a commission structure. The absence of a finalized agreement undercuts any claim that a specific false representation was made.

Second, the alleged misrepresentations are not independent of the agreement's subject matter. The commission arrangement is addressed directly in the Letter of Intent's paragraph 13, which expressly acknowledges that the terms remained to be negotiated. Again, where a written agreement addresses the alleged misrepresentation's subject matter, Florida law precludes a fraud claim based on prior or contemporaneous statements that are inconsistent with or subsumed within the agreement. *See B & G Aventura*, 97 So. 3d at 309.

11

The reason is simple. The Letter of Intent does not merely fail to include a specific commission term. Rather, the Letter of Intent affirmatively states that no agreement has been reached, and the parties will attempt to negotiate an agreement in the future. This express acknowledgment negates any reasonable reliance on prior statements suggesting the parties already had agreed upon a specific commission. A party cannot claim to have been misled into believing that a term was fixed when the governing document explicitly states that the term was not fixed.

Third, McDowell's reliance on the alleged representations was not justifiable as a matter of law. Justifiable reliance is an essential element of fraudulent inducement. *See Prieto*, 97 So. 3d at 917. Where a written agreement contradicts the alleged misrepresentation, reliance on the prior statement is generally deemed unreasonable. *See TRG Night Hawk Ltd. v. Registry Dev. Corp.*, 17 So. 3d 782, 784 (Fla. 2d DCA 2009). The law recognizes this principle to prevent parties from avoiding the consequences of the contracts which they execute. *Id.* In this case, the Letter of Intent clearly informed McDowell that the commission schedule had not been finalized. Any reliance on alleged prior statements suggesting otherwise is directly contradicted by the agreement's express language. Under these circumstances, no reasonable jury could find that McDowell justifiably relied on such statements.

Fourth, McDowell's fraudulent inducement claim suffers from the same fundamental deficiency as his breach of contract claim, namely the absence of definite terms regarding the commission. Without an agreed-upon commission structure, it is impossible to determine whether any representation was false or whether any damages resulted from reliance on that representation. The lack of specificity that renders the contract unenforceable likewise precludes the fraud claim.

In short, McDowell failed to present legally sufficient evidence of a false statement of material fact, justifiable reliance, or damages arising from any independent misrepresentation. The alleged statements concern future expectations, are subsumed within the parties' written agreement, and are contradicted by the express language of that agreement. Such allegations cannot support a claim for fraudulent inducement.

Accordingly, the trial court properly granted directed verdicts for Moore and Garcia on the fraudulent inducement count.

### b. NVS's Cross-Appeal

Finally, we address NVS's cross-appeal, which contends that the trial court erred in denying NVS's motion for directed verdict on McDowell's breach of contract claim. Like the other claims discussed herein, the resolution of this issue turns on the same foundational question about whether the Letter of Intent's paragraph 13 constituted an enforceable contract. However, the cross-appeal's procedural posture differs in that the jury returned a verdict against NVS, and the trial court declined to disturb that verdict despite the underlying agreement's legal deficiencies.

A trial court's ruling on a motion for directed verdict is reviewed de novo. *See Morakis*, 288 So. 3d at 688. A directed verdict should be granted where the evidence, viewed in the light most favorable to the nonmoving party, cannot support a legally sufficient verdict. *See id.* (quoting *Houghton*, 680 So. 2d at 522). Critically, where the dispositive issue is one of law rather than fact, such as the existence of an enforceable contract, the matter is particularly appropriate for resolution by directed verdict.

As explained above, paragraph 13's enforceability presents a pure question of law because the material facts concerning the Letter of Intent's contents are undisputed. Paragraph 13 expressly acknowledges that the parties had not agreed upon the commission arrangement's essential terms and would attempt to do so in the future. Florida law provides that such provisions are unenforceable as agreements to agree. *See John Alden Life Ins. Co.*, 675 So. 2d at 189; *Certified Motors, LLC,* 369 So. 3d at 1258.

This conclusion's logical consequence is dispositive of NVS's liability. A breach of contract claim cannot be sustained in the absence of a valid and enforceable contract. *See Deauville*, 219 So. 3d at 953. Because paragraph 13 fails to establish definite essential terms regarding the commission, paragraph 13 cannot serve as the basis for imposing contractual liability on NVS.

The jury's finding that the Letter of Intent contained "all essential terms to be a binding contract as to the commissions" does not alter this conclusion. While questions of fact are generally reserved for the jury, the determination of whether a contract is sufficiently definite to be enforceable is a question of law for the court. *See Triton*, 308 So. 3d at 1006. A jury cannot, through its verdict, supply essential terms that the parties themselves failed to establish. Just as a court cannot create a contract, a jury is similarly precluded from creating a contract rather than being limited to resolving whether a contract was created.

The record further demonstrates why enforcing paragraph 13 would require precisely the sort of judicial speculation that Florida law forbids.

13

The parties, including NVS, never agreed on a commission percentage, with evidence reflecting a range of possibilities. Nor did the parties agree on whether commissions would apply to all qualifying sales, how commissions would be calculated, or how long the obligation would continue. These terms' absence leaves no objective basis for determining breach or calculating damages. Without a definite contractual framework, any damages award necessarily rests on assumptions about what the parties *might* have agreed, rather than what they *actually* agreed.

McDowell argues that NVS's course of performance as a corporate entity, including paying some commissions, demonstrates the existence of an enforceable agreement. While course of performance may, in some circumstances, aid in interpreting ambiguous contractual terms, course of performance cannot supply essential terms where none exist. Florida law distinguishes between ambiguity, which permits interpretation, and indefiniteness, which precludes enforcement. *See Certified Motors*, 369 So. 3d at 1257. Here, the problem is not ambiguity in agreed terms, but the absence of agreement altogether.

Similarly, McDowell's argument that the commission provision should be enforced because he fully performed by transferring his shares does not cure the lack of definiteness. While partial performance may, in certain contexts, support enforcement of otherwise uncertain agreements, partial performance cannot create a contract where the parties never agreed upon the essential terms. *See Triton*, 308 So. 3d at 1009. The doctrine of part performance does not permit a court to impose contractual obligations that the parties did not define.

The Letter of Intent's provision that the failure to agree on a commission schedule would not render the agreement unenforceable likewise does not alter the analysis. As discussed above, that language is expressly limited to enforceability "to the extent permitted by law." Because the law does not permit enforcement of agreements lacking essential terms, parties cannot otherwise avoid its application by circumventing this requirement.

The undisputed evidence establishes that the parties failed to agree on the commission arrangement's essential terms. As a matter of law, paragraph 13 is an unenforceable agreement to agree. Because no valid contract existed, NVS was entitled to judgment as a matter of law on the breach of contract claim like the other defendants in this case. The trial court therefore erred in denying NVS's motion for directed verdict.

## III.     Conclusion

14

We affirm the trial court's rulings granting directed verdicts for Moore and Garcia, and reverse the denial of NVS's motion for directed verdict for the reasons discussed above. Accordingly, we remand with instructions to enter judgment in NVS's favor. We affirm on all other issues without comment.

*Affirmed in part, reversed in part, and remanded with instructions.*

SHAW and LOTT, JJ., concur.

\*  \*  \*

***Not final until disposition of timely-filed motion for rehearing.***