507 So.2d 1211 (1987)
Rafael D. ARANGO, M.D., and Taranco & Associates Anesthesiology Group, P.A., Appellants/Cross Appellees,
v.
George REYKA, As Personal Representative of the Estate of Mary A. Reyka, Deceased and the Survivors Thereof; Hospital Development and Service Corporation and/or Hospital Corporation of America D/B/a Plantation General Hospital; et al., Appellees/Cross Appellants.
HOSPITAL DEVELOPMENT AND SERVICE CORPORATION d/b/a Plantation General Hospital, Appellant/Cross Appellee,
v.
George REYKA, As Personal Representative of the Estate of Mary A. Reyka, Deceased and the Survivors Thereof, Rafael D. Arango, M.D., Taranco & Associates Anesthesiology Group, P.A., Joel S. Shulman, M.D., Goodman Cardiopulmonary Assoc., et al., Appellees/Cross Appellants.
FLORIDA PATIENT'S COMPENSATION FUND, Appellant/Cross Appellee,
v.
Rafael D. ARANGO, M.D., & Taranco & Associates Anesthesiology Group, P.A., George Reyka, As Personal Representative of the Estate of Mary A. Reyka, Deceased, and the Survivors Thereof, Appellees/Cross Appellants.
George REYKA, As Personal Representative of the Estate of Mary A. Reyka, Deceased, Appellant,
v.
HOSPITAL DEVELOPMENT AND SERVICE CORPORATION d/b/a Plantation General Hospital, Rafael D. Arango, M.D., Taranco & Associates Anesthesiology Group, P.A., Joel S. Shulman, M.D., Goodman Cardiopulmonary Associates, M.D., P.A., and Florida Patient's Compensation Fund, Appellees.
Nos. 85-419, 85-452, 85-467 and 85-1475.
District Court of Appeal of Florida, Fourth District.
June 3, 1987.
*1212 Rosenberg & Davis, Davie, and James C. Blecke, Miami, for Rafael D. Arango, M.D. and Taranco & Associates.
Rex Conrad and Valerie Shea of Conrad, Scherer & James, Fort Lauderdale, for Hospital Development and Service Corp. d/b/a Plantation General Hosp.
K.P. Jones of Jones, Zaifert and Steinberg, Fort Lauderdale, for Florida Patient's Compensation Fund.
Sheldon J. Schlesinger, P.A., Fort Lauderdale, and Joel D. Eaton of Podhurst, Orseck, Parks, Josefsberg, Eaton, Meadow & Olin, P.A., Miami, for George Reyka, as personal representative of the Estate of Mary A. Reyka.
STONE, Judge.
The jury in this wrongful death action determined that the defendant anesthesiology association, Taranco & Associates Anesthesiology Group, P.A., and the codefendant hospital, Hospital Development and Service Corporation, were engaged in a joint venture. The primary issue in this appeal is whether the trial court erred in denying the hospital's motions for a directed verdict and for judgment n.o.v., based on an alleged insufficiency of the evidence. There was no claim of direct negligence on the part of the hospital, its liability being completely vicarious.
The elements of a joint venture are:
1) a community of interest in performance of a common purpose;
2) joint control or right of control;
3) a joint proprietary interest;
4) a right to share in profits;
5) a duty to share in losses.
*1213 Kislak v. Kreedian, 95 So.2d 510 (Fla. 1957); Hewitt v. Price, 222 So.2d 247 (Fla. 3d DCA), cert denied, 225 So.2d 919 (Fla. 1969).
The hospital contends that as a matter of law, it was not a joint venturer, and that the evidence does not support the jury's findings. The contract between the defendants describes the hospital as a billing and collection agency for the professional corporation. The hospital billed the patients and retained 12 1/2% of all collections. The hospital owned and furnished the anesthesiology equipment and medications used. The agreement provided that doctors would be at the hospital twenty four hours a day, seven days a week. However, the anesthesiology group did not have an exclusive right to deliver anesthesiology services, and retained the right to furnish independent services in other locations. The hospital did not have the right to control the professional decisions of the doctors with respect to the use of medications, procedures or equipment; however it conducted the billing and scheduling of patients, and controlled the credit and collection policies.
While the plaintiffs insist that there was abundant evidence to establish each joint venture element, the hospital argues that such evidence was lacking. The hospital also contends that the legal concept of a joint venture is not sustainable in a hospital-physician context, and that permitting its application in such a situation is unprecedented.
As a general rule, a hospital is not vicariously liable for the negligence of a physician on its staff. Reed v. Good Samaritan Hospital Association, 453 So.2d 229 (Fla. 4th DCA 1984). But in cases where vicarious liability is claimed by virtue of the doctrine of respondeat superior, the type of relationship between the hospital and the doctor, or medical personnel, is a question for the jury, if supported by competent evidence. See Wilson v. Lee Memorial Hospital, 65 So.2d 40 (Fla. 1953); Irving v. Doctors Hospital of Lake Worth, Inc., 415 So.2d 55 (Fla. 4th DCA), rev. denied, 422 So.2d 842 (Fla. 1982). In weighing appellants' motions, the trial judge, and this court, must accept the evidence in the light most favorable to the nonmovant. American Cyanamid Co. v. Roy, 466 So.2d 1079 (Fla. 4th DCA 1984), quashed in part on other grounds, 498 So.2d 859 (Fla. 1986); Toyota Motor Co. v. Moll, 438 So.2d 192 (Fla. 4th DCA 1983).
We find that the cases relied on by the hospital,[1] in which claims of a joint venture between a hospital and physician were rejected, are not controlling. Here the contract provided for a division, or splitting, of the fee. It is irrelevant that the arrangement was 87 1/2  12 1/2%; for the purposes of considering legal sufficiency, the apportionment may as well have been 50-50. (It is interesting to note that a percentage fee arrangement between the parties preexisted the obligation of the hospital to perform the billing and collecting.)
The hospital scheduled the patients, but it required the group to man up to five operating rooms daily, and to maintain at least three doctors on call at all times to perform emergencies. The hospital automatically assigned patients to the group, referred to as its "Department of Anesthesia."
Here there was evidence of a common purpose, where each party needed the other, as in any partnership in which each partner brings to the enterprise capital, skills, labor, licensing, resources, or knowledge not possessed by the other. In this arrangement, there was evidence of shared control, which was split or divided by mutual agreement between the defendants. Each had control over some aspect of providing anesthesiology services; neither had exclusive control. Russell v. Thielen, 82 So.2d 143 (Fla. 1955); Kilgore Seed Co. v. Lewin, 141 So.2d 809 (Fla. 2d DCA 1962). *1214 This is not an uncommon business arrangement.
The hospital and anesthesiology group had a joint interest in the financial benefits and profits generated by the combination of their resources and services. Profits and losses were shared on a pro rata basis, with one party having to bear the cost of facilities, equipment and supplies, and the other the cost of services. The hospital was to receive its percentage without regard to the total amount of billing, without any "floor" or "ceiling," and without regard to its costs.
No legal nor policy reason exists preventing a hospital from entering into a joint venture agreement with a provider of medical services. The fact that the physicians have an obligation to maintain control of their medical judgment does not prevent them from entering into a joint venture contract which recognizes their professional and ethical obligations to their patients, any more than it would prevent a physician or nurse from becoming a hospital employee while still retaining his or her professional responsibility. The fact that the hospital cannot "control" the exercise of that professional judgment is no different from the inability of any lay person possibly engaged in a joint venture with a professional or licensed expert, (whether that expert be a lawyer, electrical contractor, or an atomic power producer), to require the latter to perform acts contrary to his professional or skilled judgment. The finder of fact may conclude, depending on the circumstances of such a situation, that there is either a joint venture or that the provider of services is an independent contractor.
Here, there was sufficient evidence from which the jurors could determine that the hospital was participating in the fees and not merely charging for a billing service, particularly since the parties maintained a fee percentage arrangement previous to their billing agreement, during which time an outside agent billed the patients.
The hospital's argument that countervailing policy considerations weigh against applying a joint venture concept to this type of arrangement overlooks the right of a party to enter into any contract or agreement permitted by law. Having voluntarily done so, the hospital must now share in the legal consequences.
In a consolidated appeal, Dr. Arango, a member of the anesthesiology group sued for medical malpractice, claims error in the use of a deposition taken of a codefendant doctor, who was a member of the same association. The deposition was taken prior to the joinder of Dr. Arango in the suit. We do not accept plaintiff's argument that Dr. Arango had "notice" of this deposition, despite the fact he had not yet been personally sued, because his future attorney was present in the capacity of counsel for another party. Nor do we accept the argument that the witness, although adverse, was Dr. Arango's agent. The admission of the deposition was error. See Brown v. Tanner, 164 So.2d 848 (Fla. 1st DCA 1964). This case differs from Hanisch v. Wilder, 210 So.2d 491 (Fla. 3d DCA 1968), as there the party himself was the witness and he had counsel present. 210 So.2d at 492. However, although the admission of the hearsay evidence was error, we conclude, upon a review of the record, that it was harmless. Appellants have failed to demonstrate that admission of the evidence affected the outcome of the litigation or that its use resulted in a miscarriage of justice. See § 59.041, Fla. Stat. (1985).
By a cross appeal, plaintiff alleges error in the granting of a directed verdict in favor of a codefendant, Hospital Corporation of America. HCA is the shareholder "agent" of Hospital Development and Service Corporation. The plaintiff contends that HCA was more than a shareholder due to its involvement in preparing payroll checks and receiving reports. The plaintiff does not seek to pierce the corporate veil nor are any improper actions alleged. Dania Jai-Alai Palace, Inc. v. Sykes, 450 So.2d 1114 (Fla. 1984), is not controlling, as in that case there was sufficient proof, which, if accepted by the jury, showed that *1215 the two entities operated independently of each other. Here there is insufficient evidence to state a prima facie case sufficient to hold HCA liable for the torts of the hospital. See Ex Parte Baker, 432 So.2d 1281 (Ala. 1983). The facts that the heads of a subsidiary corporation report from time to time to the board of directors of the parent organization, and that the parent company does the payroll, are insufficient, by themselves, to state a prima facie case. There was no evidence that the funds for the payroll were not supplied by the subsidiary.
Therefore, as to all issues we affirm.
GUNTHER, J., concurs.
ANSTEAD, J., dissents in part with opinion.
ANSTEAD, Judge, dissenting in part.
I do not believe the evidence supports the finding of joint venture. See Underwood v. Holy Name of Jesus Hospital, 289 Ala. 216, 266 So.2d 773 (1972).
NOTES
[1] See Underwood v. Holy Name of Jesus Hospital, 289 Ala. 216, 266 So.2d 773 (1972); Hundt v. Proctor Community Hospital, 5 Ill. App.3d 987, 284 N.E.2d 676 (1972); Spannaus v. Otolaryngology Clinic, 308 Minn. 334, 242 N.W.2d 594 (1976).