KHOUZAM, Judge.
 

 TRG Night Hawk Ltd., TRG Night Hawk, Inc., and The Related Companies of Florida (collectively TRG) appeal an amended final judgment entered in favor of Registry Development Corporation (the Buyer) on its negligent misrepresentation and Florida Deceptive and Unfair Trade Practices Act claims. Because the trial court erred as a matter of law in denying TRG’s motion for a directed verdict, we reverse.
 

 The dispute between the parties arises from the sale and purchase of land zoned as a Planned Unit Development (PUD) in Collier County, Florida. The PUD permitted the development of a maximum of 518 residential units. After building 300 units on a portion of the PUD, TRG decided to sell the remaining undeveloped land. In April 2003, TRG provided the Buyer’s broker with a site survey and a site plan that demonstrated 218 units could be built on the property. The outdated survey failed to disclose a drainage easement that was recorded in December 2000. The 218 units depicted in the site plan could not be built because it conflicted with the easement.
 

 On May 1, 2003, the Buyer’s broker sent TRG a memorandum with a copy of the drainage easement after the Buyer’s site architect expressed concerns that the easement might reduce the number of units that could be built on the property. Nonetheless, in July 2003, the Buyer entered into a contract to purchase the property from TRG for $4.36 million. Section 1(g) of the contract provided that the “Intended Use” for the property was for a 218 unit, multifamily residential development. Section 1(h) expressly identified the drainage easement as a “permitted” exception to the title. The contract provided the Buyer with a due diligence or inspection period to determine if the property was suitable for the “Intended Use.” In addition, the contract disclaimed any representations as to issues related to governmental approvals and provided that the contract constituted “the sole and entire agreement among the parties.”
 

 On July 31, 2003, the last day of the due diligence period, the Buyer’s counsel sent a letter to TRG’s counsel asking for a bifurcation of the contract or an extension of the due diligence period because of several concerns, including whether fewer than 218 units could be built on the property. The Buyer’s counsel stated that if the request was not granted, the contract would be terminated. TRG did not respond and treated the letter as a termination of the contract. The Buyer, however, claimed that its counsel was not authorized to terminate the contract and stated that it intended to move forward with the purchase of the property.
 

 On August 14, 2003, representatives of the Buyer and TRG met to discuss the property. During the meeting, a TRG representative allegedly misrepresented that 218 units could be built on the property, that the site plan had been approved, and that all governmental approvals, in-
 
 *784
 
 eluding a South Florida Water Management District (SFWMD) permit, had been obtained. TRG and the Buyer agreed that the Buyer had terminated the original contract. The parties signed a “Reinstatement of, and Amendment to, Real Estate Contract.”
 

 Section 6 of the contract provided as follows:
 

 Deletion of Provisions in Original Contract.
 
 Section l.(g) of the Original Contract is hereby deleted in its entirety and the term “Intended Use” (wherever so found in the Original Contract) is fully stricken from the Contract.... In connection with this Section 6, Purchaser acknowledges and agrees that it hereby waives any and all of its rights in connection with the Inspection Period, including, but not limited to, any and all right(s) of termination in connection therewith. Purchaser further acknowledges that Seller has no further requirements relating to the delivery of the Due Diligence Materials.
 

 The contract left intact the merger clause and the provision disclaiming any representations as to issues related to governmental approvals. Under the reinstated contract, the Buyer would pay a nonrefundable $200,000 deposit and close on or before October 20, 2003.
 

 On August 27, 2003, a consultant hired by the Buyer reviewed the SFWMD files and learned that fewer than 218 units could be built on the property, the site plan had not been approved, and no permit had been issued. The Buyer failed to close on the property and TRG terminated the contract. In December 2003, the Buyer filed a complaint against TRG alleging fraud in the inducement, negligent misrepresentation, and violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA).
 

 After a four-day trial, the jury found in favor of the Buyer on its negligent misrepresentation and FDUTPA claims. The trial court awarded the Buyer $200,000 in damages, plus prejudgment interest, after granting TRG’s motion for remittitur. TRG moved for a directed verdict during trial, and it filed a posttrial motion to set aside the jury verdict. Both motions were denied.
 

 On appeal, TRG argues that there was no evidence on which the jury could legally find that the Buyer had justifiably relied on TRG’s alleged misrepresentations. We agree and find that TRG was entitled to a directed verdict on the Buyer’s claims.
 

 A party cannot recover for alleged false misrepresentations that are adequately dealt with or expressly contradicted in a later written contract.
 
 See, e.g., Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp.,
 
 850 So.2d 536, 542-43 (Fla. 5th DCA 2003);
 
 Hillcrest Pac. Corp. v. Yamamura,
 
 727 So.2d 1053, 1056 (Fla. 4th DCA 1999). “To hold otherwise is to invite contracting parties to make agreements of the kind in suit and then avoid them by simply taking the stand and swearing that they relied on some other statement.”
 
 Tevini v. Roscioli Yacht Sales, Inc.,
 
 597 So.2d 913, 914 (Fla. 4th DCA 1992).
 

 Further, a party who signs a contract whose terms contradict the alleged misrepresentations on which he relied is barred “from seeking relief pursuant to FDUTPA, as he acted unreasonably.”
 
 Rosa v. Amoco Oil Co.,
 
 262 F.Supp.2d 1364, 1368 (S.D.Fla.2003).
 

 Here, the terms of the reinstated contract are inconsistent with the alleged misrepresentations upon which the Buyer supposedly relied. The contract provided that TRG made no representations regarding governmental approvals and expressly re
 
 *785
 
 moved any references to the “Intended Use” of 218 units for the property. As such, the Buyer could not justifiably rely on any representations from TRG concerning governmental approvals and the number of units that could be built on the property. The trial court should have granted TRG’s motion for a directed verdict.
 
 See St. Joseph’s Hosp. v. Cowart,
 
 891 So.2d 1039, 1042 (Fla. 2d DCA 2004) (holding that “[a] motion for directed verdict should be granted if there is no evidence on which a jury could legally base a verdict for damages against the moving party”).
 

 Accordingly, we reverse and remand for the entry of a judgment in favor of TRG. Our reversal on this ground moots TRG’s other issues on appeal.
 

 Reversed and remanded.
 

 WHATLEY and WALLACE, JJ., Concur.