# Third District Court of Appeal

## State of Florida

Opinion filed March 28, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-1983
Lower Tribunal No. 10-63439
_____


**Publix Super Markets, Inc.,**
Appellant,

vs.

**Jessie Bellaiche,**
Appellee.


An Appeal from the Circuit Court for Miami-Dade County, Migna Sanchez-Llorens, Judge.

Weiss, Serota, Helfman, Cole & Bierman, P.L., Edward G. Guedes and Anne Reilly, for appellant.

Shmuely & Willis, P.A., and Rami Shmuely; Robert L. Switkes & Associates, P.A., and Robert L. Switkes; Podhurst Orseck, P.A., and Stephen F. Rosenthal; Michael Higer, P.A., and Michael J. Higer, for appellee.


Before ROTHENBERG, C.J., and SALTER and FERNANDEZ, JJ.

FERNANDEZ, J.

Publix Super Markets, Inc. appeals the trial court's final judgment entered in favor of the plaintiff below, Jessie Bellaiche, denying Publix's three post-trial motions for relief. Under the record before us, Publix was entitled to a directed verdict, as there was no evidence establishing either actual knowledge of the dangerous condition or that a Publix employee caused the dangerous condition. Accordingly, we reverse.

On August 11, 2010, Bellaiche, a 70-year-old woman, was shopping at a Publix store with her husband, John Basilone. After arriving at a checkout station, Bellaiche realized that she had forgotten to put a couple of items that she wanted in her shopping cart. Basilone then went to retrieve those items from the appropriate aisle but also decided to pick up a few other things and order a sandwich from the deli. When Basilone returned to the checkout station, Bellaiche was sitting in a chair, crying. Basilone testified that when he came back, he "saw a man with a mop in his hand," but testified that he did not know what the man was doing.

Soon after, Basilone learned that after he left to go get the forgotten items, Bellaiche left her cart next to the cashier and started walking up a nearby aisle, aisle 17, to find her husband because he "was taking some time" to return. While walking up the aisle, Bellaiche slipped and fell on some water, which she did not see on the floor beforehand. Bellaiche asserts that after falling, she subsequently "saw a Publix employee with a mop in his hand." No one testified that this mop

2

was wet or that the employee had been using it, either in aisle 17 or anywhere else within the store. Furthermore, at the time of Bellaiche's fall, Publix's store manager, Paul Fournier, testified that Publix utilized dry rayon mops to mop its floors, not pre-soaked cotton mops that could create puddles of water. Fournier also testified that the only custodian on duty at the time of the incident whose duty was to mop was Saint Gerard Thervil, and video surveillance shows that Thervil had only been using a broom and dustpan before Bellaiche's fall.

As a result of the incident, Bellaiche suffered a shoulder injury, which she underwent surgery for about one month later on September 8, 2010. Bellaiche's surgeon and physician, Dr. Leonard Remia, concluded that the surgery went well and that Bellaiche was making good progress afterward. Bellaiche was even able to fly to Paris more than once after the procedure was conducted. By October 2010, Bellaiche's pain had already diminished to zero to two on the pain scale, indicating little to no pain at all, even though she had suffered another fall unrelated to the initial one at issue here. Despite having been advised to attend physical therapy, as of February 28, 2011, Bellaiche had not done so. Three years after Dr. Remia treated Bellaiche, in May 2014, Bellaiche went to Dr. Gus Leotta, III, who noted that Bellaiche had a constrained range of motion and was hurting. However, Bellaiche did not show up to the CT scan and second visit that Dr. Leotta scheduled for her, and she never went back to Dr. Leotta. Dr. Leotta could

3

not determine whether Bellaiche's increased pain was due to her subsequent fall or her fall at Publix.

After the conclusion of trial, which was conducted more than five years after Bellaiche's fall, the jury returned a verdict for Bellaiche and awarded her over $1.5 million in damages, accounting for Bellaiche's past medical expenses leading up to trial ($60,356.22), non-economic damages from the date of her accident to the end of trial ($500,000), and future pain and suffering ($1,000,000). Bellaiche's future life expectancy at the time was 12.9 years. After trial, Publix filed post-trial motions for a directed verdict, new trial, and remittitur, all of which the trial court denied.

The standard of review for a denial of a directed verdict is de novo, and the court must look at all evidence in a light most favorable to the non-movant. Marriott Int'l, Inc. v. Am. Bridge Bah., Ltd., 193 So. 3d 902, 905 (Fla. 3d DCA 2015). The standard of review for both denial of a motion for new trial and a motion for remittitur is abuse of discretion. Maggolc, Inc. v. Roberson, 116 So. 3d 556, 558 (Fla. 3d DCA 2013); Montesinos v. Zapata, 43 So. 3d 97, 98 (Fla. 3d DCA 2010).

On appeal, Publix claims that the trial court erred in denying its motion for directed verdict because sufficient evidence did not exist demonstrating that Publix had actual knowledge of the dangerous condition that prompted Bellaiche's fall or

4

that one of its employees caused the condition that resulted in the fall. In deciding how to rule on a motion for directed verdict, the court must determine if any reasonable evidence exists to support a jury verdict in favor of the non-movant. Tylinski v. Klein Auto. Inc., 90 So. 3d 870, 873 (Fla. 3d DCA 2012).

Pursuant to section 768.0755, Florida Statutes, Bellaiche was required to prove that Publix had actual or constructive knowledge of a dangerous condition created by a transient foreign substance that caused Bellaiche to slip and fall. Encarnacion v. Lifemark Hosps. of Fla., 211 So. 3d 275 (Fla. 3d DCA 2017); § 768.0755, Fla. Stat. (2010). However, at trial, in her response to Publix's motion for directed verdict, and during closing, Bellaiche stated that she was not proceeding under a theory of constructive knowledge of the dangerous condition, but under a theory of actual knowledge because she alleged "the man standing with the mop" caused the water to be on the floor in aisle 17. However, her testimony was that, after she fell, she saw a man holding a mop and that he was standing there, nothing more. A jury may not stack inferences to determine that a party had actual knowledge of a dangerous condition, nor is the mere possibility of causation sufficient to establish liability. Montgomery v. Fla. Jitney Jungle Stores, Inc., 281 So. 2d 302, 305-06 (Fla. 1973); 50 State Sec. Serv. Inc. v. Giangrandi, 132 So. 3d 1128, 1149 (Fla 3d DCA 2013). If the only way that a jury can find that a party

5

was negligent is by stacking inferences, "then a directed verdict is warranted." Sanders v. ERP Operating Ltd. P'ship, 157 So. 3d 273, 277 (Fla. 2015).

Here, there is no evidence that Publix had actual notice of the dangerous condition, presumably water on the floor based on her testimony that her pants were wet. The only evidence that Bellaiche presents to support her position that Publix had actual knowledge is that she saw a man holding a mop standing in front of her after falling. However, video evidence clearly demonstrates that the only janitor on duty at the time had been not been using anything other than a broom and dustpan to clean, leading up to the exact moment at which Bellaiche fell. Not one person testified that the mop that this man was holding was wet. The Publix store manager testified that his store uses dry rayon mops to spot mot its floors, not pre-soaked cotton mops. At best, a reasonable jury could only arrive at a verdict for Bellaiche by stacking inferences drawn from the purely circumstantial evidence presented, which it cannot do. Montgomery, 281 So. 2d at 305-06; 50 State Sec. Serv. Inc., 132 So. 3d at 1149. Thus, based on the evidence presented, a reasonable jury could not have found that Publix had actual knowledge of the water that caused Bellaiche to slip and fall. The trial court thus erred in denying Publix's motion for a directed verdict.

We reverse the trial court's denial of Publix's motions for a directed verdict and remand to the trial court with instructions to enter judgment in Publix's favor.

Because we are reversing the trial court's decision to deny Publix's post-trial motion for a directed verdict, we need not address Publix's post-trial motion for a new trial or motion for remittitur.

Reversed and remanded with instructions.